Good morning, everyone. All right, there's one case on the calendar that has been submitted on the briefs in record, and that's United States v. Anwar. And we have previously deferred Kahn v. Garland. The first case for argument is Kelvin Hernandez-Mendoza v. Garland. Good morning, counsel. Whenever you're ready. Good morning, Your Honors, and may it please the Court, I'm Jeremy Peterman on behalf of Kelvin Hernandez-Mendoza. I'd like to reserve two minutes for rebuttal, and Judge Wynn, I'll keep my eye on the clock. I want to focus primarily today on the reliable evidence issue. Disputed portions of a victim's allegations that were not relied upon in a criminal proceeding are not reliable evidence for the purposes of determining whether the resulting conviction is a particularly serious crime. That is because the particularly serious crime inquiry focuses on the circumstances underpinning the actual conviction, but a victim's untested statement is only evidence of what the victim initially alleged, not what the state believed, what it thought it could prove at trial, what a defendant agreed to as part of the agreement, or what a judge credited for sentencing. Just a minute. Can you hold on a second, counsel? I don't think the clock is moving. And I'm hearing an echo on your end, counsel. Perhaps it will help if you move a little closer to the microphone. Sure, I'll move it as close as I can. Is this better, Judge Wynn? Yes, thank you. So, as I was saying, a victim's statement is only evidence of what the victim alleged, not what a defendant agreed to as part of the agreement, or what a judge credited for sentencing. All intervening events that can narrow the circumstances on which a conviction actually rests. And critically, because the victim's statement is only the one-side story at the beginning of the criminal process, the statement itself provides no reliable basis for determining whether the conviction that emerges from that process actually rested on the victim's full account. What about the fact that there's corroboration, including physical injuries? So, respectfully, Judge Wynn, there's not corroboration with respect to the disputed portions of the statement. Mr. Hernandez-Mendoza disputes that he knew the act was not consensual and that he held the victim down, hit the victim, and there's no corroboration as to those injuries. The medical report only showed a suction mark on the neck and some tearing, which are both consistent with an encounter that somebody believes is consensual. I would also point the court to the main reason that the IJ gave for not fully crediting the victim's statement was that the IJ thought that it was inconsistent with Mr. Hernandez-Mendoza's decision to plead guilty to sexual abuse. The IJ said that four times, and as we explain in our brief, that's plainly incorrect. Mr. Hernandez-Mendoza pled guilty on stipulated facts to the minimum conduct, and that decision to plead guilty to that conduct did not require him to concede the victim's account. Mr. Hernandez-Mendoza was originally charged with a more serious first-degree charge that would have required him to concede all of the victim's allegations, but he refused to plead guilty to that charge, and the state ultimately dismissed it. But, counsel, didn't he have to plead guilty to having intercourse without consent? No, Your Honor. He had to plead guilty to having intercourse with the victim not consenting, as we explain in our brief, in State v. Haltom. Now, why isn't that not enough? Because he did not have to have knowledge himself that the victim did not consent, and I submit that would be a critical difference for determining whether a crime is particularly serious. And for purposes of this Court's review, the I.J. plainly believed that he knowingly submitted, that he knowingly subjected the victim to intercourse without consent, and that was the basis for the decision. The I.J. did not consider a set of facts where there may have been a mistake as to consent. I'd also would want to touch on the substantial fairness concerns going on here. Because Mr. Hernandez-Mendoza pled guilty only to the minimum conduct, he believed that was all of the conduct that he would be held accountable for and that he would be punished for. He did not believe that later on in immigration proceedings,  allegations that were not admitted to in his plea agreement, in which he did not have an opportunity to develop a record on. Yet, the I.J.'s decision essentially does that. It holds him accountable for the first degree charge for which, as part of his plea agreement, the State agreed to dismiss it. And that's just simply not the sort of reliable, fundamentally fair process that is required when you're making a particularly serious crime determination, which bars a non-citizen from seeking even withholding of removal, no matter how certain or severe the risk of torture that they face in their own country. I'd also point the court to Biacchini and Alcaraz-Enriquez, in which this court considered very similar evidence outside the record of conviction and held that it was not reliable evidence of the circumstances on which the conviction rested. Biacchini held that it was error for the I.J. to rely on statements in a pre-sentencing report where the alleged facts were contested and ultimately rejected or not adopted by the district court. That's the same situation here. The alleged facts are contested and they were not relied upon or adopted in the criminal proceeding. But in Barr, this court said that an I.J. could rely on a wide-ranging set of documents including conviction records, sentencing information, and other information outside the confines of a record of conviction. Certainly, Your Honor. And our argument is not that the I.J. is limited to the record of conviction, but Barr is not a case about reliability. All of the evidence that the I.J. relied upon in Barr was uncontested. This court went out of its way to note that the non-citizen did not challenge the reliability of the sentencing memorandum. This case is a reliability case. A victim statement could potentially be reliable in a situation where there's some evidence linking it to the actual conviction. But absent that, where it's contested, it's not reliable evidence of the conviction. So, is it uncontested that he unlawfully and knowingly subjected his victim to anal intercourse without consent? Without the victim's consent, yes. But it is contested whether he knowingly knew that the victim did not consent. Well, I mean, I thought it's knowingly subjected his victim without consent. Isn't that what the statute says? Without the victim's consent. And if you look at State v. Households... So, he knew that he did not have the victim's consent. No, he did not have to know that he did not have the victim's consent. So, what does knowingly go to, then, in the statute? Knowingly goes to the intercourse genre. If you look at State v. Haltom, which we cite in our reply brief, it's an Oregon case specifically addressing sexual abuse in the second degree. And it says that knowledge is not required for the consent element. Recklessness or criminal negligence suffices. The Oregon Supreme Court subsequently overruled that in 2020 and held that knowledge is required, but that was well after the conviction in this case. The government, in its brief, cited jury instructions from Oregon, which had a knowledge element in it. But if you go to the Westlaw page where those jury instructions appear, they cite the 2020 Oregon case, which subsequently overruled Haltom. But Haltom was the rule that governed at all relevant times when Mr. Mendez-Mendoza was considering his plea agreement and ultimately pled guilty. And I submit that that's an essential distinction because that was the basis for the IJ's decision here. The IJ believed that he knowingly acted without the victim's consent, and that's just not what the plea agreement required. I do want to touch very briefly on the CAT claim. On the CAT claim, the board's chief error was that it failed to meaningfully discuss the country conditions, evidence, and evidence of harm to similarly situated individuals. The board is required to consider all elements relevant to the probability of future torture. The record contained dire statements from the State Department, United Nations, and an expert on the particularly high risk of kidnapping, torture, and death faced by human rights defenders who challenged gangs like Mr. Hernandez-Mendoza. The record also contained statements from an expert about individuals who worked at similar organizations to Mr. Hernandez-Mendoza who were killed, abducted, and forced to flee to the United States to avoid gang violence. The IJ did not give that evidence any consideration. And when it talked about the country conditions reports, it did so only in contradictory ways that never gave it the reasoned consideration that this court's cases in Parada and Guam require. The court did note the country conditions reports. It noted that there was severe conditions for human rights defenders, but it never then went on and explained why that evidence could not substantiate the claim here. The IJ seems to just be transfixed on the fact that Mr. Hernandez-Mendoza had not suffered past persecution himself. But as this court explained in Guam, that's not enough. You still have to look at the country conditions. And if the country conditions reports could substantiate a claim, the IJ has to give that meaningful consideration. You're down to 30 seconds. Would you like to save that for rebuttal? Yeah. If the court has no further questions, I'll save the remainder of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors. Joseph O'Connell on behalf of the Attorney General. So the first thing I'd like to do is refute some things that Mr. Hernandez advanced in his briefs. The very first thing is that the Biocini case does not stand for the proposition that contested statements that are not explicitly admitted to in a plea agreement or adopted by a trial court are unreliable and cannot be considered in the particularly serious crime context. So in Biocini, in the underlying criminal case, the district court made a finding accepting defense's version of the facts and not the facts alleged in the pre-sentence report. So in other words, the evidence in that case indicated that the facts in the pre-sentence report were not accurate. So given those circumstances, this court held that the agency shouldn't have considered the pre-sentence report in the particularly serious crime analysis because there was actually reason to doubt the reliability of that document. The Biocini court went on to limit the applicability of its own decision in footnote 2, stating that it was not holding that a convicting court must affirmatively find the facts as alleged in a pre-sentence report to be considered in the particularly serious crime context. It also stated, quote, our conclusion about the reliability of the information in the PSR in this case stems from the facts presented here, unquote. So again, it limited itself to the facts of that case, not to mention the fact that it's an unpublished decision. So Mr. Hernandez ignores all this, even the self-limiting footnote, in making his argument that contested statements have to be admitted in a plea or adopted by a trial court. This argument also applies in the face of about 10 years of the court's case law, which says, number one, the categorical approach does not apply in the PSC, particularly serious crime analysis. And number two, the agency can consider any reliable information in the PSC analysis, including information that's not in the record of conviction. So Mr. Hernandez is essentially trying to shoehorn that categorical approach into the particularly serious crime analysis, and that's not correct. Again, if you look back through the case law, you can see that that argument is contrary to all the court's holdings. In several cases, the court observes that there is nothing in the particularly serious crime statute that limits the scope of evidence that can be considered. It's been said multiple times in many published cases. And the court's also deferred to a matter of NAM, which is the seminal board case discussing what type of evidence can be considered. So in NAM, the board considered a statement from a witness in support of a warrantless arrest. So that's sort of the perfect example of facts that haven't been found by a criminal court that was used appropriately in the particularly serious crime context. And again, this court deferred to NAM in Anaya Ortiz. So in those cases, the court and the board sort of laid out the process about how this PSC analysis goes. And honestly, there's really not much of a process. Basically, the process is that both sides get to introduce evidence about the conviction, about what happened. And then the IJ weighs the evidence and makes a decision. So bringing that back to this case, the IJ has the conviction documents. He has the interviews of the victim, the victim's mother, the roommate, and medical documents. So he has all this evidence on one side. On the other side, and I think this is incredibly telling, Mr. Hernandez chose not to testify in any capacity about the circumstances of the sexual assault. Literally nothing aside from admitting that he was convicted. Instead of testifying, he submitted a pre-hearing statement through his attorney. Again, no sworn declaration, no affidavit that issued this sort of blanket denial claiming that the sex was consensual. And so that's all we have on the other hand. So with that, the IJ looked at the evidence that was before him. Evidence from the victim, the witnesses, the medical report, police report regarding what happened during the sexual assault. And he made a determination, the correct determination that this conviction was particularly serious. And so just to be clear, if Mr. Hernandez wanted to contest these statements, he had every opportunity to do so in the immigration court, but he didn't. He didn't say it worked. And honestly, he can't be surprised that he didn't try to explain himself because then he would have to explain how this incident also led to the coercion conviction. And before he argues that this is a separate conviction, Mr. Hernandez admitted in his brief to the immigration court that these two convictions stem from the same incident. And coercion under Oregon law requires that the defendant instill in his victim a fear that they will suffer physical violence if they don't comply with his demands. And so it's no wonder that he didn't talk about the circumstances of sexual assault during the immigration court. So instead he's relying on this sort of blanket denial, while not subjecting himself to any cross-examination by government. So on that note, while I mention cross-examination, I want to mention another case that's relied on by Mr. Hernandez. And that's the Alcarez 2 case. Before you do that, counsel, do you agree that it's disputed that he knew that he did not have the victim's consent? He disputes that now, but again, he had every opportunity to talk about that in the immigration court and explain his side of the story. So to the extent that Mr. Hernandez argues that this is the least amount of facts necessary for conviction, that's all applicable in the categorical analysis, which is completely not applicable in this case. The categorical analysis this court has held does not apply. It's basically just two parties both submitting evidence about what happened. It's not a categorical analysis. The least facts necessary for a conviction is not applicable. It doesn't matter. But do you agree that knowingly does not modify without her consent, the victim's consent? I think that's what the Oregon Supreme Court case said. But again, if he was going to testify, he has to testify why he was also convicted of coercion as a result of that same incident. So those were part of the facts and circumstances. Again, the conviction for coercion is not the PSC, but it was also part of the facts and circumstances. So you can look at all those facts and circumstances from that night of the sexual assault, and he would have to explain that. And he would have to explain why he didn't know the victim didn't give consent, but at the same time, he was convicted of coercion, which means that he instilled in his victim the fear of physical violence if she did not comply. It doesn't make any sense. So also just getting back to the Alperez case. So Mr. Hernandez characterizes that case holding that a probation report is unreliable in the absence of live testimony, and that's not quite what happened. In Alperez, the probation report was submitted, and that probation report included the victim's version of events. Mr. Alperez wanted the opportunity to cross-examine either the author of the report or the declarant. The court held that where a petitioner wants to do that, the DHS has some obligation to make a good faith effort to produce the witnesses. And so it held that it was a violation of fundamental fairness where the DHS made no effort whatsoever to produce the witnesses. Here, Mr. Hernandez didn't object to the evidence, and he didn't ask to cross-examine anyone. Again, he didn't say anything in the immigration court about what happened during the night in question. If he'd asked to cross-examine someone and the DHS said no, I mean, maybe the holding in Alperez might apply, but that's just not the case here. So to characterize the holding as contested statements or unreliable is just not accurate. There's a few more things I'd like to just briefly touch on. He challenges the fact that the IJ noted that the sentence was concurrent. The IJ was very careful to observe that he couldn't take into account the 11 months for the coercion, but he did note that when Mr. Hernandez was sentenced for the sexual abuse crime, it was a concurrent sentence. This is just sort of akin to considering a sentence enhancement in the PSC context, which is plainly permitted under this court's case law. Let's see, I have two minutes left, so unless the court has any questions about the PSC, I'll just briefly touch on the CAT claim. So I just want to say a few quick things about that. First and foremost, Mr. Hernandez has never been tortured. He's never been physically harmed, and he's never even been threatened by anyone in Honduras. He's also voluntarily returned to Honduras on three separate occasions prior to his 2017 entry in the United States. So I know that he claims that the agency didn't consider this or that evidence of country conditions, but number one, there's no obligation on the agency to address and dismiss every piece of evidence that's submitted, especially when there's hundreds of pages of documentation on that. All that's required is that the agency provide a decision illustrating that it did consider the evidence instead of simply reacting. And so the agency did just that. Just to give you an example, the agency made note of the environmental protester who was killed in March 2016 by private actors, but the agency also noted that the Honduran government made eight arrests with seven convictions after that case. So there's no evidence of Honduran acquiescence to torture. Again, Mr. Hernandez had to show that it's more likely than not that he would be tortured, and he also had to show that it's more likely than not that the Honduran government would consent or acquiesce to his torture. Again, I mean, just to speak plainly, this case doesn't come close to satisfying the burden of proof for the cat relief. And unless there's any questions on that, I have about 20 seconds. No, it doesn't appear that we have any questions. Thank you, counsel. You're welcome. Your Honors, I'd like to make two quick points. I want to pick up with Judge Bumate's question to counsel. Counsel agreed with our reading of the Oregon statute, and his response was that Mr. Hernandez-Mendoza did not contest this evidence before the IJ. He plainly did if you look at AR-59 and AR-60. The IJ notes that he contested consent, and the IJ said you can't do that consistent with your decision to plead guilty to sexual abuse. Counsel also mentioned the coercion charge. That was not a basis for the IJ's decision in rejecting Mr. Hernandez-Mendoza contesting the evidence, and that's not the sort of thing that this court could fill in and gap fill for the agency on appeal. The agency would have to consider it in the first instance. It's the amount of time, so I'd urge the court to grant the petition for review and remand to the IJ for a full consideration of Mr. Hernandez-Mendoza's claims. All right. Thank you, counsel. Thank you, Your Honors. Thank you to both sides for your argument, and thank you, Mr. Peterman, for taking this case. The matter is submitted for decision by the court.
judges: NGUYEN, MILLER, BUMATAY